IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOE JACKSON d/b/a J&D BUILDERS, individually and as the representative of a class of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> RELIANT SERVICES GROUP, LLC d/b/a RELIANT FUNDING, a California Limited Liability Company, ADAM STETTNER, and JOHN DOES 1-12, <br><br> Defendants. | Case No. 15-cv-03224 <br><br> Hon. Samuel Der-Yeghiayan |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
TO RECONSIDER THE COURT'S MARCH 18, 2016 ORDER
AND ALLOW PLAINTIFF TO AMEND AND REFILE ITS COMPLAINT**

**I.     Plaintiff's proposed amended complaint is not futile.**

**A.     Consent.**

Defendants first argue that Plaintiff's Amended Complaint is futile because they allege that, because Plaintiff gave its fax number to Defendants, he thereby provided prior express permission and consent to Defendants to send him fax advertisements. Response, pp. 3-6. Essentially, Defendants argue that, by responding to Defendants' inquiry and providing his fax number – without knowledge as to how that number would be used – Plaintiff provided (implied) express consent to receive fax advertisements from Defendants. *Id*. Defendants are wrong – the mere fact that Plaintiff informed Defendants of his fax number did not constitute consent to receive fax advertisements.

"In ordinary parlance, there is no such thing as 'implied express consent'—that is an oxymoron. Giving out one's [fax] number, … is not 'express' consent to besiegement by" junk

advertising faxing. *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 C 04473, 2012 WL 3835089, *5 (N.D. Ill. Sept. 4, 2012). The FCC has stated, "We do not believe that the intent of the TCPA is to equate mere distribution or publication of a telephone facsimile number with prior express permission or invitation to receive … advertisements." *In the Matter of the Telephone Consumer Protection Act of 1991*, Memo. Opinion and Order, ¶ 37, 10 FCC Rcg. 12391 (Aug. 7, 1995). Express consent is consent that is clearly and unmistakably stated. *Satterfield v. Simon & Schuster*, 569 F.3d 946, 955 (9th Cir. 2009).

Moreover, the burden regarding proof of consent is on Defendants. "Express permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements. We believe the burden on companies to obtain express permission is warranted when balanced against the need to protect consumers and businesses from bearing the advertising costs of those companies." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14129-30 (July 3, 2003) (emphasis added). In 2006, the FCC codified its view, explaining that "<u>the sender must take reasonable steps to verify that the recipient consented…</u>." 71 Fed. Reg. 25967-01, 25968 (emphasis added); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, Civil Action No. 3:13-CV-00489-TBR, 2014 WL 294621, *19 n. 22 (W.D. Ky. June 30, 2014).

Here, Plaintiff alleges that he never gave express consent to receive fax advertisements, and that, when he provided his fax number to Defendants, it was done without any knowledge as to why Defendants wanted the fax number, and without any intent to provide Defendants permission to send him fax advertisements. Doc. 36-1, ¶ 22. Defendants had an obligation to gather *express* permission to fax Plaintiff advertisements − not implied permission − and Defendants' failure to do so means that they cannot now claim that the subject faxes were

2

solicited. Therefore, Plaintiff successfully alleged that he never provided express permission and consent to Defendants to send him fax advertisements, and Defendants are therefore liable under the Telephone Consumer Protection Act ("TCPA").

Defendants' Response relies mainly on *Practice Management Support Services, Inc. v. Appeal Solutions, Inc.*, 2010 WL 748170 (N.D.Ill. 2010), but that case improperly expanded the opinion of *Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, 2009 WL 602019 (W.D.Wis. 2009), and stands in stark contrast to both subsequent decisions within the Seventh Circuit (and other Circuits) and the controlling federal regulations. Response, pp. 4-6. *Practice Management*'s opinion rests primarily on *Landsman & Funk, P.C.*, but that case did *not* hold that simply providing a fax number equaled consent. *See Practice Management Support Services, Inc.*, 2010 WL 748170 at *3. Instead, *Landsman & Funk, P.C.* held that, because the plaintiff was expressly informed by the defendant that providing its fax number would equal agreeing to receive fax advertisements, it cannot assert that the subject fax advertisements were "unsolicited". *See Landsman & Funk, P.C.*, 2009 WL 602019 at *1-2.[1] *Practice Management*, however, took this opinion to mean that *any* transmission of a person's fax number equals express consent, regardless of how informed (or not) the plaintiffs are regarding why their fax numbers are being requested. *See Practice Management Support Services, Inc.*, 2010 WL 748170 at *3. Significantly, this improper expansion of the *Landsman & Funk, P.C.* opinion has not been followed by subsequent courts in the Seventh Circuit. *See e.g.*, *Thrasher-Lyon*, 2012

---

[1] In *Landsman & Funk, P.C.*, the plaintiff listed its fax number on a form that clearly explained that, "PROVIDING YOUR FAX NUMBER CONSTITUES AN EXPRESS INVITATION TO SEND YOU FAX ADVERTISEMENTS ABOUT FUTURE LORMAN SEMINARS." *Landsman & Funk, P.C.*, 2009 WL 602019 at *1-2.

3

WL 3835089at *5.[2] Thus, like subsequent courts within the Seventh Circuit, this Court should also disregard the holding of *Practice Management*.[3]

### B.     Opt-out Notice.

Even if Defendants were correct that simply providing a fax number without context equals consent to receive unsolicited fax advertisements, Plaintiff's Amended Complaint would still adequately allege that Defendants violated the TCPA by failing to comply with the TCPA's opt-out requirement. On July 11, 2005, Congress passed the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, 119 Stat. 359 (2005) ("JFPA"), placing additional restrictions on the sending of faxed advertisements, including an "opt-out notice" requirement. SOF, ¶ 10. Specifically, 47 C.F.R. § 64.1200(a)(3)(iv) provides:

> A facsimile advertisement that is sent to a recipient that has provided express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a) (3) (iii) of this section.

Paragraph (a)(3)(iii) of the regulations states the requirements for a compliant opt-out notice:

> The advertisement contains a notice that informs the recipient of the ability and

---

[2] Any attempt by Defendants to contend that *CE Design, Ltd. v. Speedway Crane, LLC*, 2015 IL App (1st) 132572, 35 N.E.3d 1022 (2015) follows the principle extolled in Practice Management should be disregarded, as Plaintiff explains how distinguishable *Speedway* is (and how it more correctly adheres to the principle of *Landsman & Funk, P.C.*) below.

[3] Defendants also rely on *City Select Auto Sales, Inc. v. David/Randall Associates, Inc.*, 96 F. Supp. 3d 403 (D.N.J. 2015), but *City Select* does not endorse nor analyze the opinion of *Practice Management*. Instead, it merely acknowledges that the holding in *Practice Management* has no bearing on the facts of *City Select*. *Id*. at 418. As such, any reliance by Defendants on *City Select* is misguided. Moreover, *City Select* goes on to hold that "even if the Court found that Defendants' submission raises a genuine issue of fact as to whether any class members consented to the advertisement of David/Randall's services, or had an existing business relationship with David/Randall, summary judgment on this issue would still be warranted because the record contains no genuine dispute that the advertisements failed to contain a statutorily-compliant opt-out notice." *Id*. at 418. Therefore, because Plaintiff's Amended Complaint has adequately (and truthfully) alleged that Defendants' fax advertisement fails to contain the necessary opt-out provision, under Defendants' own cited case, Plaintiff's Amended Complaint has sufficiently pled Defendants' TCPA liability and is not "futile."

> means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if--
> > (A) The notice is *clear and conspicuous* and on the first page of the advertisement;
> > (B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that *failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a) (3) (v) of this section is unlawful* ….

47 C.F.R. § 64.1200(a)(3)(iii) (italics added).

As courts, including the Seventh Circuit, have acknowledged, the opt-out provision is required on *all* advertisements sent by fax, whether with or without permission. *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Because Top of Mind omitted opt-out notices, it does not matter which recipients consented or had an established business relation with Turza."). "The Court notes as well that even if the defendants had presented evidence sufficient to raise a fact issue as to whether any class members consented to the WEI fax, or had an existing business relationship with WEI, such that sending the fax to them would have been permissible, summary judgment on this issue would still be warranted because the [TCPA] requires that an unsolicited advertisement clearly and conspicuously notify a recipient that it may opt out of receiving any future unsolicited advertisements from the sender and that the sender's failure to comply, within 30 days, is unlawful." *Paldo Sign and Display Company v. Wagener Equities, Inc.*, 67 F.Supp.3d 874, 885 (N.D.Ill. 2014); *see also City Select Auto Sales, Inc. v. David/Randall Associates, Inc.*, 96 F.Supp.3d 403, 418 (D.N.J. 2015) ("Moreover, even if the Court found that Defendants' submission raises a genuine issue of fact as to whether any class members consented to the advertisement of David/Randall's services, or had an existing business relationship with David/Randall, summary judgment on this issue would still be warranted because the record contains no genuine dispute that the advertisements failed to contain a

5

statutorily-compliant opt-out notice."); *Spine and Sports Chiropractic, Inc. v. Zirmed, Inc.*, Civil Action No. 3:13-CV-00489-TBR, 2014 WL 2946421, *19 (W.D. Ky. June 30, 2014) (collecting cases).

Here, Plaintiff's Amended Complaint alleges that the subject fax advertisement fails to contain a complaint opt-out notice, as required by the TCPA. Doc. 36-1, ¶¶ 26-27. Therefore, irrespective of the Court's conclusion as to whether providing a fax number without knowledge to its use equals "consent," Plaintiff's Amended Complaint accurately alleges that Defendants are liable under the TCPA, and filing the Amended Complaint would not be "futile."

Notably, in both *Practice Management* and *Landsman & Funk, P.C.*, relied on by Defendants, the courts alluded to the fact that party *could* be held liable under the TCPA should they fail to comply with the TCPA's opt-out requirement. *See Practice Management Support Services, Inc.*, 2010 WL 748170 at *4 (holding that the plaintiff could not survive summary judgment because it did not plead that the defendants failed to comply with the TCPA's opt-out requirement – thereby implying that the plaintiff would have been successful if they had pled an opt-out violation); *Landsman & Funk, P.C.*, 2009 WL 602019 at *6-7 (acknowledging that, while the *Landsman & Funk, P.C.* defendant successfully complied with the TCPA's opt-out requirement, it would have been liable under the TCPA had they not satisfied that requirement, regardless of whether consent was obtained or not). Here, in contrast to both *Practice Management* and *Landsman & Funk, P.C.*, Plaintiff *has* successfully pled that Defendants' subject fax fails to comply with the TCPA's opt-out requirement. Doc. 36-1, ¶¶ 26-27. Therefore, irrespective of its ability to claim that the subject fax was "unsolicited," Defendants are liable under the TCPA. Thus, Plaintiff's Amended Complaint is not "futile," and the Court should grant Plaintiff's Motion.

**II.     Defendants' other arguments against the Amended Complaint are unpersuasive, and belied by the facts of the case.**

In addition to claiming that Plaintiff's Amended Complaint is futile, Defendants also claim that Plaintiff tried to "obscure the dispositive impact of his allegation that he provided his fax number directly to Reliant by proposing to add a series of red-herrings. *See* Response, pp. 6-8. Defendants are incorrect on the facts and the Court's basis for dismissing its original complaint.

In the Court's March 18, 2016 Order dismissing Plaintiff's TCPA claim, the Court noted that the fax itself does not appear to be a "general advertisement to any prospective customer[,]" but instead reflects a business relationship where Defendants' employee, Chris Stout, spoke with Plaintiff and set Plaintiff up with an account number. *See* Doc. 35, p. 4. Significantly, the Court's decision to grant Defendants' motion to dismiss was based on the fact that Plaintiff did not allege any facts that would suggest that the information contained in the fax advertisement "inaccurately [reflected Plaintiff's] ongoing business relationship with Reliant." *Id*.

Therefore, far from introducing "a series of red-herrings," Plaintiff's Amended Complaint attempts to address the Court's concerns and provide additional context to his allegations. Plaintiff provides the requested context as to how he had a phone conversation with Defendants, but not an established business relationship (he was cold-called). Further, Plaintiff's Amended Complaint provides additional facts about the fax itself – something the Court specifically asked for so as to determine that the information on the face of the fax was incorrect. *Supra*.

Defendants, however, argue that Plaintiff's claims of having "never consented to being faxed any documents from Defendants (advertisements or otherwise)" and "never established any account" with Defendants "does not mean that Plaintiff did not consent to receiving

7

information about those services by fax." Response, pp. 8-9, n. 5. This is an absurd conclusion; Plaintiff explicitly states that he was cold called by Defendants, but was not interested in their services and did not consent to receive any communication via facsimile. *Id*.; Doc. 36-1, ¶¶ 22-25. Therefore, Plaintiff is alleging *precisely* that he never consented to receive information from Defendants by fax. Consequently, Plaintiff's Amended Complaint is not "futile," and the Court should reconsider its March 18, 2016 Order and grant Plaintiff leave it file its amended complaint.

Defendants' also take issue with Plaintiff's allegation that they never told Plaintiff why they were asking for his fax number, claiming that it was self-evident that the reason was to send fax advertisements and, therefore, Plaintiff's providing his fax number "objectively indicated a willingness to receive faxes[.]" Response, p. 7 (quotations omitted). As discussed above, this is not the law – "implied express consent" does not exist, and Defendants were under an obligation to obtain *express* consent from Plaintiff to receive fax advertisements – something Plaintiff never gave. *See* Doc. 36-1, ¶ 22. Plaintiff's Amended Complaint adequately alleges that Defendants failed to obtain express consent, and are therefore liable under the TCPA. *Id*. Defendants attempt to shift the burden onto Plaintiff to actively request not to be faxed cannot obscure that fact, and should be rejected.

Defendants' argument relies heavily on *CE Design, Ltd. v. Speedway Crane, LLC*, 2015 IL App (1st) 132572, 35 N.E.3d 1022 (2015). This case, however, is wholly distinguishable from the case at bar. In *Speedway*, the Illinois Appellate Court determined that the plaintiff had given prior express consent by joining the Blue Book – a "well-established directory of commercial construction businesses[,]" whose purpose was to "bring buyers and sellers together within the commercial construction industry[,]" and giving that directory its fax number. *Id*. at ¶ 27. Thus,

the *Speedway* court concluded that, due to the inherent nature of the Blue Book, as well as the steps the *Speedway* plaintiff had to take to have its fax number published in the Blue Book, there could be no doubt that the plaintiff knew that, by providing its fax number, it was consenting to be contacted via facsimile. *Id*. at ¶¶ 21-42. Here, in contrast, Defendants simply cold-called Plaintiff and asked for its fax number. Doc. 36-1, ¶ 22. There was no "well-established" practice that would have informed Plaintiff that, by providing his fax number, he would be subject to fax advertisements, nor did Defendants inform Plaintiff that he would be subject to facsimile communication. Indeed, the main crux of the *Speedway* opinion – that the surrounding circumstances were so overt that the Speedway plaintiff had to have been on notice that providing his fax number would equal consent to receive fax advertisements – is not present here. Consequently, *Speedway* is inapplicable in the case at bar, and Plaintiff's provision of its fax number to Defendants did not indicate a "willingness to receive faxes from" Defendants. Consequently, Plaintiff has adequately alleged that Defendants failed to obtain prior express permission to send fax advertisements, and are therefore liable under the TCPA.[4] Thus, Plaintiff's Amended Complaint is not "futile," and the Court should grant Plaintiff's Motion.

**III.     Plaintiff's Motion was not made in bad faith.**

Finally, Defendants argue that Plaintiff's request for leave to amend was made in bad faith because, according to Defendants, Plaintiff strategically delayed "asserting the critical fact that he provided his fax number directly to Reliant." Response, p. 10. In reality, Plaintiff did not delay asserting critical facts, but merely responded to the Court's request for more detail as to the circumstances surrounding the subject fax advertisement – detail that is wholly consistent with

---

[4] As noted earlier, all of this is moot, as Plaintiff has successfully alleged that, regardless of Defendants' obtaining prior express permission to send the fax advertisements, Defendants failed to include a sufficient opt-out notice, as required by the TCPA.

Plaintiff's claims in its original complaint.

Plaintiff's theory of the case – that the fax advertisement was unsolicited and failed to contain the necessary opt-out notice as required by the TCPA – has not changed. *Compare* Doc. 1 with Doc. 36-1. Far from withholding crucial, exculpatory details, Plaintiff is simply responding to the Court's March 18, 2016 Order and providing more context in which to view the subject fax advertisement. Indeed, in the Court's March 18, 2016 Order, it held that Plaintiff had not alleged "facts that suggest that Reliant acquired his phone number in any manner other than during his telephone conversations with Reliant and as a part of an established business relationship with Reliant." Doc. 35, p. 4. Plaintiff' amended complaint now explains *how* Defendants obtained its fax number, and how the subject fax was still unsolicited and in violation of the TCPA. Therefore, instead of acting in bad faith, Plaintiff is responding to the directives of the Court.

Defendants' main case of support for their position is *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993). This case, however, is not only distinguishable from the case at bar, but has been refuted by a much more analogous case. In *Wimm*, the plaintiffs brought claims of negligence and product liability when their son died following the ingestion of cough medicine. *Id*. at 138. Following the plaintiffs' first amended complaint, the defendants filed a motion for summary judgment, prompting the plaintiffs to subsequently move the court for leave to file a second amended complaint, seeking to add two new claims of negligent mislabeling and violations of the Deceptive Trade Practices Act. *Id.* at 138–39. The district court, and ultimately Fifth Circuit, denied the plaintiff's attempt to amend their complaint, claiming that the plaintiffs were seeking to add multiple claims in an attempt to avoid summary judgment. *Id*. at 139-40.

*Wimm*, however, was later distinguished and refuted by the much more analogous case of

*Petrobras America, Inc. v. Vicinay Cadenas, S.A.*, 921 F.Supp.2d 685 (S.D.Tex. 2013). In *Petrobras*, the plaintiffs were not seeking to add new claims, as in *Wimm*, but rather to provide additional information for the purpose of "clarifying any misunderstanding regarding the nature of Plaintiffs' claims." *Id*. at 690 (quotations omitted). Moreover, unlike in *Wimm*, the *Petrobras* court determined that the amended complaint would not be futile. *Id*. at 691. Therefore, the *Petrobras* court held that *Wimm* was distinguishable, bad faith was not present, and plaintiffs free to amend their complaint. *Id*. at 692. Here, in the same vein as *Petrobras*, Plaintiff is not attempting to add multiple claims, but rather clarify any misunderstanding regarding the nature of Plaintiff's claims (as suggested by the Court's March 18, 2016 Order). *Supra*. Moreover, just as *Petrobras*, Plaintiff amendments would not be futile. *Supra*. Therefore, this Court should follow the *Petrobras* court's example – find *Wimm* to be distinguishable, bad faith to not exist, and grant Plaintiff's Motion.

Defendants also cite *Horton v. Vinson*, 2015 WL 4774276 (N.D.W.Va. Aug. 12, 2015) and *Williams v. Savage*, 569 F.Supp.2d 99 (D.D.C. 2008), but both cases are distinguishable from the case at bar. In *Horton*, the plaintiff conceded that it failed to state a plausible § 1983 conspiracy claim and attempted to allege new allegations in order to "plead around immunity" *Horton*, 2015 WL 4774276, at *27-29. More specifically, the *Horton* plaintiff failed to allege facts establishing a necessary element of a § 1983 conspiracy claim, and was attempting to remedy that. *Id*. The *Horton* court held that, because the plaintiff was attempting to add additional facts so as to establish a legitimate cause of action, it was acting in bad faith. *Id*. Here, in contrast, Plaintiff is not attempting to add additional facts to establish its cause of action – his original complaint and amended complaint both establish that the subject fax advertisement was unsolicited and failed to include the necessary opt-out language. *Compare*, Doc. 1 *and* Doc. 36-

11

1. Instead, Plaintiff is simply responding to the Court directives to add additional context to its allegations so as to explain why the information on the face of the subject fax is untrustworthy. As a result, the central holding of *Horton* is inapplicable here.

In *Williams v. Savage*, 569 F.Supp.2d 99, 103-04 (D.D.C. 2008), the plaintiffs also failed to plead an underlying violation necessary to sustain their claims under §§ 1983 and 1985. The *Williams* court held that, because the plaintiffs had not justified their delay in pleading the necessary facts to sustain their claims, they "demonstrated … bad faith." *Id*. at 108. In contrast, Plaintiff has justified its reasoning for providing additional context – the Court's March 18, 2016 Order requested it. Moreover, unlike in *Williams*, the additional facts are not necessary to sustain Plaintiff's TCPA claim, but instead used to demonstrate the untruthfulness of the information found on the face of the subject fax advertisement. Therefore, *Williams* is also inapplicable in the case at bar.

Defendants have been unable to provide any meaningful basis to infer that Plaintiff's amended complaint was brought in "bad faith." Indeed, Plaintiff's amended complaint merely seeks to clarify any misunderstanding regarding the nature of Plaintiff's claims. Therefore, the Court should find that no bad faith exists and grant Plaintiff's Motion.

## CONCLUSION

WHEREFORE, for the reasons stated above, the Court should reconsider its March 18, 2016 Order and allow Plaintiff leave to amend and refile its complaint.


Dated: June 16, 2016                                Respectfully submitted,


                                                    s/ Christopher P.T. Tourek
                                                    One of Plaintiff's Attorneys

12

                                                  Phillip A. Bock
                                                  James M. Smith
                                                  Christopher P.T. Tourek
                                                  Bock, Hatch, Lewis & Oppenheim, LLC
                                                  134 N. La Salle Street, Suite 1000
                                                  Chicago, IL 60602
                                                  Telephone: 312-658-5500

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 16, 2016, I caused the foregoing to be filed using the Court's CM/ECF System which will send notification of such filing to all counsel of record.

                                                        /s/ Christopher P.T. Tourek